## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ANTHONY CASSO,

Defendant.

No. 1:90-cr-00446-FB-3

The Honorable Frederic Block

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ANTHONY CASSO'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE

Anthony Casso, through undersigned counsel, respectfully moves for a reduction of his sentence of imprisonment to time served and a modification of the remainder of his sentence to supervised release under home confinement pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A).

Mr. Casso is a 78-year-old, wheelchair-bound man serving a life sentence at USP Tucson. He has prostate cancer, coronary artery disease—for which he has been awaiting a heart operation—kidney disease, hypertension, bladder disease, and respiratory issues associated with a history of smoking.

Just days ago, he tested positive for COVID-19. He is currently hospitalized due to severe respiratory problems.

Mr. Casso's COVID-19 infection comes as no surprise. He warned of the risk just weeks before contracting the disease in a petition to the Warden of USP Tucson. He sought compassionate release for fear of contracting the disease, given the large outbreaks at Bureau of Prison (BOP) facilities including USP Tucson, and the risk that COVID-19 poses specifically to him, given his rapidly deteriorating health. The Warden denied that request, assuring Mr. Casso

1

that "BOP is taking extraordinary measures to contain the spread of COVID-19" and that Mr. Casso's "concern about being potentially exposed to, or possibly contracting COVID-19" does not warrant early release. Sadly, Mr. Casso's concerns were warranted.

Mr. Casso has served 22 years of his sentence, and has demonstrated that this period of incarceration has provided sufficient punishment and deterrence. Among other reasons, his advanced age and deteriorating health confirm that he no longer poses a danger to the community. His COVID-19 infection and rapidly deteriorating health require better medical care than BOP can provide. And if he survives this infection, the medical literature indicates that he would both remain at significant risk of reinfection and would likely continue to suffer significant aftereffects of his COVID infection.

For his crimes of nearly a quarter-century ago, Mr. Casso was sentenced to life in prison. He was not sentenced to death. But he remains at serious risk of death due to COVID-19 if he remains incarcerated. Mr. Casso respectfully requests that this Court reduce his prison sentence under the Act to time served and to modify the remainder of his sentence to a term of supervised release under home confinement.

## BACKGROUND

Over two decades ago, Mr. Casso was convicted of murder, racketeering, and extortion, among other crimes. Your Honor sentenced Mr. Casso to multiple life sentences, to be followed by five years of supervised release. Judgment, Dkt. No. 1141. To date, he has served 22 years of his sentence. Mr. Casso is incarcerated at USP Tucson and currently hospitalized at a nearby hospital because of his severe COVID-19 symptoms.

Mr. Casso's serious medical conditions put him at an inordinately high risk of experiencing lasting health effects or even death from the COVID-19 virus. Mr. Casso has, among other serious

medical conditions, prostate cancer, coronary artery disease, hypertension, kidney disease, bladder disease, and respiratory issues associated with a history of smoking,[1] all of which individually place Mr. Casso at a heightened risk of experiencing severe complications or even death from COVID-19.[2] In addition, Mr. Casso is now wheelchair-bound, which also puts him at higher risk of experiencing severe complications from the COVID-19 virus.[3] On top of this, the CDC has indicated that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19."[4] Because Mr. Casso suffers from a number of serious medical conditions, any one of which individually increases his risk of death or suffering serious complications from COVID-19, he therefore has an exponentially heightened risk of suffering deleterious health effects from the COVID-19 virus, including after an initial infection.

Mr. Casso's risk of serious complications or death from his current COVID-19 infection is exacerbated by his inability to manage his conditions while incarcerated at USP Tucson. Studies have shown that prisons are ill-equipped to manage COVID-19 outbreaks in their facilities and are susceptible to serious outbreaks, due to prisons' inability to properly isolate inmates and staff who test positive for the virus.[5] This susceptibility to the virus is apparent at USP Tucson, where Mr.

---

[1] Mr. Casso's medical records, which are over 200 pages in length, have been filed under seal. *See* Decl. Ex. B.

[2] *People with Certain Medical Conditions*, CDC, https://rb.gy/wqvhfg, (last update Nov. 2, 2020); *COVID-19: Who's at higher risk of serious symptoms?*, Mayo Clinic (Aug. 21, 2020), https://rb.gy/6scjcf.

[3] *People with Disabilities*, CDC, https://rb.gy/yg36tb, (last updated Sept. 11, 2020).

[4] *Id.*

[5] *See* Chris Dall, *Studies spotlight high COVID-19 infection rate in US prisons*, University of Minnesota Center for Infectious Disease Research and Policy, https://rb.gy/tfrmga, (last updated Aug. 21, 2020), ("Preventing the spread of [COVID-19] in correctional facilities is difficult because of the crowded living conditions, limited ability to isolate or practice social distancing, and inadequate hygiene. In such settings, the virus spreads easily."); *see also* Matthew J. Akiyama, M.D., Anne C. Spaulding, M.D., and Josiah D. Rich, M.D., *Flattening the Curve for Incarcerated Populations—Covid-19 in Jails and Prisons*, N. Eng. J. of Med, https://rb.gy/zq4dxl, (last updated May 28, 2020) ("People entering jails are among the

Casso is housed—to date, the prison has had 221 positive cases of COVID-19, and is currently suffering from one of the worst outbreaks in the federal prison system, with 190 active cases among inmates and staff.[6]

Because of Mr. Casso's serious medical conditions and his inability to keep safe from the virus while in prison, Mr. Casso submitted a request for compassionate release with the warden of USP Tucson. In the request, Mr. Casso described his serious medical conditions and the severe risk that he would personally face if COVID-19 spread throughout the facility. On September 17, 2020, the warden denied his request. *See* Ghafary Declaration ("Decl."), Ex. C. The warden concluded that after "consultation with USP Tucson's medical department," Mr. Casso's health conditions were "being appropriately managed and treated," and that the prison facility and the BOP were "taking extraordinary measures to contain the spread of COVID-19 and treat affected inmates." *Id.* Presciently, Mr. Casso was right that these measures were not sufficient to safeguard his health.

Mr. Casso tested positive for COVID-19 late in the week of November 2, 2020, and began to display serious symptoms associated with the virus. *See* Decl., Ex. A. He was taken to a hospital due to severe difficulty breathing, and once stabilized, returned to USP Tucson. *Id.* Over the weekend, he was again taken to the hospital because he had difficulty breathing, and was later returned to USP Tucson. *Id.* On the morning of November 9, 2020, Mr. Casso was hospitalized for a third time because he was again having significant respiratory problems. *Id.* As of November 9, Mr. Casso remained in the hospital receiving treatment.

---

most vulnerable in our society, and during incarceration, that vulnerability is exacerbated by restricted movement, confined spaces, and limited medical care.").

[6] *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/, (last updated November 6, 2020).

# **ARGUMENT**

A court may grant a motion for compassionate release under 18 U.S.C. § 3852(c)(1)(A) if the defendant establishes three elements.  First, the defendant must demonstrate that he has exhausted his administrative remedies with BOP, which can be accomplished in one of two ways: (1) by demonstrating that he submitted a request for compassionate release with the warden of the correctional facility, and 30 days have lapsed since the request was served on the warden, regardless of whether or not the request was ultimately denied; or (2) the defendant has fully exhausted his "administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf."[7]  18 U.S.C. § 3582(c)(1)(A).  Second, a defendant must demonstrate that "extraordinary and compelling reasons" warrant a reduction or modification of his sentence.  *Id.* § 3582(c)(1)(A)(i).  Although the United States Sentencing Commission's policy statements guide the court's determination as to whether the inmate's situation presents "extraordinary and compelling reasons," courts have broad discretion to determine for themselves whether the defendant's situation provides "extraordinary and compelling reasons."  *Brooker*. 976 F.3d at 234; *see also* U.S.S.G. § 1B1.13 (setting forth the Commission's applicable policy statements regarding "extraordinary and compelling reasons").  Numerous courts have recognized that significant health problems in the face of the COVID-19 pandemic constitute "extraordinary and compelling reasons."  Third, under both § 3582(c)(1)(A) and § 1B1.13, any modification of the defendant's sentence must be consistent with the applicable sentencing factors under § 3553(a)*, see* 18 U.S.C. § 3582(c)(1)(A); *see also* U.S.S.G. § 1B1.13 (requiring consideration of the § 3553(a) factors, "to

---

[7] The First Step Act modified the language of § 3582(c)(1)(A), which, as originally drafted, required the BOP the bring a motion for compassionate release on behalf of the prisoner.  *See United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020) (noting that while the BOP may still bring a motion on behalf of the prisoner, the First Step Act modified the language to allow the prisoner to bring a motion on his own behalf if the BOP denies or fails to act on his request).

the extent they are applicable"), and the defendant must no longer pose a danger to the community upon application of the factors outlined by 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2).

This Court should grant Mr. Casso's motion for compassionate release because he satisfies all of these factors: *First*, Mr. Casso fulfilled the Act's exhaustion requirement because more than 30 days have lapsed since he requested compassionate release from the warden. *Second*, extraordinary and compelling reasons warrant a reduction of Mr. Casso's sentence. Mr. Casso recently tested positive for COVID-19 and has been shuffled back and forth between prison and the hospital over the past several days due to his severe difficulty breathing. His long list of serious medical conditions, including his prostate cancer, coronary artery disease, hypertension kidney disease, and respiratory issues associated with his status as a former smoker, among others, now place him at an increased risk of dying from COVID-19. His release would increase the chances of his recuperation and decrease his risk of reinfection or severe illness due to COVID-19's lasting health effects. As his infection demonstrates all too clearly, Mr. Casso is also currently incarcerated at a COVID-19 hotspot. As of November 6, 2020, 153 inmates at USP Tucson are currently positive for COVID-19—the fourth highest number among federal prisons.[8] Regardless of whether he suffers adverse effects from his current bout with the virus, Mr. Casso's continued incarceration in USP Tucson poses a grave health risk, given the possibility of reinfection. *Third,* a modification of Mr. Casso's sentence to home confinement would not be inconsistent with the § 3553(a) factors, nor would Mr. Casso's release to home confinement pose a danger to the community, given his elderly age and deteriorating health.

## I.     Mr. Casso Has Exhausted His Administrative Remedies

---

[8] *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://bit.ly/3peABUg, (last updated Nov. 9, 2020).

Compassionate release requires exhaustion of a defendant's administrative remedies with BOP. *See* 18 U.S.C. § 3852(c)(1)(A). A defendant can prove exhaustion by showing that either (1) he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the [movant's] behalf;" or (2) 30 days have passed "from the receipt of such a request by the warden of the [movant's] facility," regardless of whether the warden denied the request in the intervening time. 18 U.S.C. § 3852(c)(1)(A); *see also United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days [of submitting a request to the warden], *no matter the appeals available to them.*" (emphasis added)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020) (unpublished) (same).

Here, Mr. Casso relies on the second path to establish that he exhausted his administrative remedies. He submitted a request to the warden of USP Tucson, which was denied on September 17, 2020. *See* Decl., Ex. C. At least 30 days have passed from the time the warden was served with Mr. Casso's request to the filing of the instant motion, satisfying 18 U.S.C. § 3852(c)(1)(A)'s exhaustion requirements.

## II.     Extraordinary and Compelling Reasons Warrant Reducing Mr. Casso's Sentence

Section 3582(c)(1)(A) permits a court to reduce the defendant's term of imprisonment if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . ." 18 U.S.C. § 3582(c)(1)(A)(i).

Courts have broad discretion to determine whether an inmate's circumstances are "extraordinary and compelling." *See United States v. Ebbers*, 432 F. Supp. 3d 421, 427 n.6 (S.D.N.Y. 2020) ("[T]he First Step Act reduced the BOP's control over compassionate release and vested greater discretion with courts."). In determining whether such circumstances exist, the statute instructs courts to consider "applicable policy statements issued by the Sentencing

Commission." 18 U.S.C. § 3582(c)(1)(A). However, the Commission has not issued or amended its existing policy statements since the passage of the First Step Act. As a result, this Court is empowered under the Act to determine whether extraordinary and compelling reasons exist to reduce an inmate's sentence. *See Brooker*, 976 F.3d at 234 ("[T]he First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances."); *see also United States v. Haynes*, 456 F. Supp. 3d 496, (E.D.N.Y. 2020) (same).

The Commission's policy statements provide guidance on what qualifies as "extraordinary and compelling" reasons under the Act. *Ebbers*, 432 F. Supp. 3d, at 427. The policy statements contain two relevant provisions in this case: a provision that allows for release based on the defendant's medical conditions, and a "catchall" provision, which recognizes that unforeseen extraordinary and compelling situations can arise, and can be used when a defendant does not fit neatly within one of the enumerated categories. U.S.S.G. § 1B1.13, cmt. n.1. Courts have relied upon this catchall provision to grant relief to inmates with medical conditions that make them especially vulnerable to serious illness or death from COVID-19. *See e.g.*, *Haynes*, 456 F. Supp. 3d at 513–14; *United States v. Daugerdas*, No. 09cr581, 2020 WL 2097653, at *3 (S.D.N.Y. May 1, 2020) (exercising discretion to find that the defendant's diabetes, obesity, hypertension, and high cholesterol, in conjunction with presence of COVID-19, constituted "extraordinary and compelling reasons").

Here, extraordinary and compelling reasons warrant a reduction of Mr. Casso's prison sentence. Mr. Casso's recent diagnosis with COVID-19, the effects it will have on his present and future health given his severely deteriorating health due to cancer, heart disease, kidney disease, and other ailments, his likelihood of reinfection, and the BOP's difficulty containing the COVID-19 outbreak at USP Tucson and adequately treating those infected constitute extraordinary and

compelling reasons under the Act for a reduction of his prison sentence to time served and modification of the remainder of his sentence to supervised release under home confinement

A.    <u>Mr. Casso's Circumstances Qualify as Extraordinary and Compelling Under the First Step Act</u>

    1.    *Mr. Casso's Recent COVID-19 Diagnosis[9] Presents "Extraordinary and Compelling Reasons" for His Release.*

Mr. Casso's present infection with the COVID-19 virus presents extraordinary and compelling reasons for his release given his deteriorating underlying health condition. Mr. Casso is currently hospitalized near USP Tucson and is experiencing concerning symptoms such as severe difficulty breathing. The symptoms are lasting and recurring, as evidenced by the fact the prison has shuffled Mr. Casso back and forth between the hospital and the prison three times over the past several days. His host of comorbidities, including his diagnosed cancer, coronary artery disease, hypertension, stage 3 chronic kidney disease, and respiratory illness associated with his status as a former smoker,[10] all exponentially increase his likelihood of experiencing serious and possibly deadly side effects from the virus.[11] Given these significant risks, Mr. Casso's has a

---

[9] Mr. Casso's recent COVID-19 diagnosis does not prevent the Court from granting his motion for compassionate release. Several courts, including this Court, have released inmates who have tested positive for the COVID-19 virus. *See, e.g.*, *United States v. Razzouk*, No. 11-CR-430, 2020 U.S. Dist. LEXIS 12086, at *11 (E.D.N.Y. Apr. 19, 2020) (noting that "Razzouk has already tested positive for COVID-19— so his situation is even more urgent"); *United States v. Bandrow*, No. 17-cr-20077, 2020 WL 4050242, at *6 (E.D. Mich. July 20, 2020) (inmate recently tested positive); *United States v. Malufau*, No. CR 13-000860-06 LEK, 2020 WL 4218038, at *1 (D. Haw. July 22, 2020) (inmate was hospitalized for nine days after a positive COVID-19 test); *United States v. Arreolo-Bretado*, No. 3:19-cr-03410-BTM, Dkt. No. 50 at PageID 260 (S.D. Cal. May 15, 2020) (releasing inmate with positive COVID-19 test given the "confluence of medical conditions [from which] she suffers . . .").

[10] Although not officially diagnosed with a respiratory disease, Mr. Casso has experienced shortness of breath and has a prescription for an emergency inhaler. *See* Medical Records, Ex. A.

[11] *See* CDC, *People with Certain Medical Conditions*, https://rb.gy/csiohw, (last updated Nov. 2, 2020).

"present need for medical treatment," which he is not adequately receiving in BOP care. *United States v. Zubkov*, 460 F. Supp. 3d 450, 454 (S.D.N.Y. 2020).

Mr. Casso's diagnosis with prostate cancer puts him at an elevated risk of experiencing severe symptoms from his current COVID-19 diagnosis. It is well known that individuals suffering from cancer are at a heightened risk of experiencing severe complications, including death, from COVID-19.[12] This Court recently recognized that prostate cancer is a comorbidity for the COVID-19 virus *See United States v. Mongelli*, No. 02-CR-307 (NGG), 2020 WL 6449237, at *1 (E.D.N.Y. Nov. 3, 2020) (granting compassionate release to inmate suffering from prostate cancer).

Mr. Casso's hypertension and coronary artery disease alone place him at an extremely high risk of experiencing serious, if not fatal, side effects from his COVID-19 diagnosis. A recent study published in the New England Journal of Medicine indicates that individuals with hypertension experienced a 58% increased risk of in-hospital mortality from COVID-19.[13] The CDC has also indicated that individuals with cardiovascular disease, which includes both hypertension and coronary artery disease, experience a dramatically increased risk of experiencing severe side effects and hospitalization, with approximately 9.0% having "severe outcomes from respiratory infection" caused by COVID-19.[14]

The same goes for Mr. Casso's chronic kidney disease. Recent studies from New York's COVID-19 outbreak indicate that an individual suffering from chronic kidney disease may have a

---

[12] *See id.*

[13] *See* Matthew Cummings, et al., *Epidemiology, Clinical Course, and Outcomes of Critically Ill Adults with COVID-19 in New York City: a Prospective Cohort Study*, New England Journal of Medicine (May 19, 2020), https://rb.gy/axz877 (hereinafter referred to as "New York Study").

[14] *See* CDC, *Preliminary Estimates of the Prevalence of Select Underlying Health Conditions Among Patients with Coronavirus Disease 2019 – United States, February 12-March 28, 2020* (April 3, 2020), https://rb.gy/utomzh (hereinafter referred to as "Preliminary Estimates").

50% higher chance of suffering in-hospital mortality from COVID-19.[15]  Even more concerning for Mr. Casso's is the fact that COVID-19 has been associated with acute kidney injury, which would, in the case of Mr. Casso, exacerbate his ongoing kidney disease.[16]

Mr. Casso's status as a former smoker similarly places Mr. Casso's already fragile health in jeopardy.  Former smokers typically experience a significantly increased risk of suffering an adverse pulmonary response to the COVID-19 virus, as the respiratory symptoms associated with COVID-19 have adverse effects on already damaged lungs.[17]  These adverse effects are already being experienced by Mr. Casso, who has been rushed to the hospital three times in the past several days due to his severe difficulty breathing.

Most troubling for Mr. Casso's current COVID-19 diagnosis is the fact that he suffers from *all* of these conditions.  Because Mr. Casso suffers from several known comorbidities with the COVID-19 virus, Mr. Casso faces a heightened chance of experiencing a severe outcome from his current COVID-19 infection.[18]  His age also makes it more likely that he will experience a severe, possibly fatal, reaction to COVID-19.[19]  He will likely be in need of significant medical care in the coming days and weeks as he battles the infection.

---

[15] *See* New York Study, at Table 4.

[16] *See* National Kidney Foundation, *Kidney Disease & COVID-19*, https://rb.gy/ygj5pl, (last accessed Nov. 9, 2020).

[17] *See* Elizabeth Fernandez, *Smoking Nearly Doubles the Rate of COVID-19 Progression: New Analysis by UCSF Researchers Looked at Smokers, Former Smokers Diagnosed with Coronavirus*, University of California San Francisco, https://rb.gy/litocj, (last updated May 12, 2020) (noting that based on a then-recent study that former and current smokers faced a nearly doubled "risk of [COVID-10] disease progression" and that "current or former smokers had more acute or critical conditions or death"); *see also* CDC, *Scientific Evidence for Conditions that Increase Risk of Severe Illness*, https://rb.gy/zdjj1s, (last updated Nov. 2, 2020), (noting that the "Strongest and Most Consistent Evidence" from scientific studies supported the conclusion that smoking increases a patient's risk for serious COVID-19 infection).

[18] *See* Preliminary Estimates.

[19] *See* New York Study (noting a roughly 30% increase in the likelihood of "in-hospital mortality" per every 10-year increase in age).

In the event Mr. Casso recovers from his serious, potentially life-threatening battle with COVID-19, he will be facing months of recovery. Reports indicate that COVID-19 patients may take months to recover from the symptoms associated with infection.[20] Additionally, the virus may cause long term damage to major organ systems, such as to patents' livers, lungs, and hearts.[21] For example, one medical news network indicated that patients who recover from the virus develop permanent lung damage, and even develop fibrosis (lung scar tissue).[22] Particularly troubling for Mr. Casso's case is the recent revelation that COVID-19 can cause permanent kidney damage; even if he fully recovers from the virus, Mr. Casso's chronic kidney disease could be exacerbated by the virus, and may even cause him to experience kidney failure.[23] Allowing Mr. Casso the ability to spend his recovery period with his family and friends, who can ensure that he receives the best treatment during his long road to recovery, will be crucial in his battle against COVID-19.

Mr. Casso's current fight against COVID-19 and the increasing likelihood that he faces a long-term recovery from the effects of the virus present "extraordinary and compelling reasons" for a reduction of his sentence. Allowing Mr. Casso to spend the remainder of his sentence on home confinement, with family and friends that can ensure he receives the proper care for his worsening condition, will be vital to his eventual long-term recovery from the virus.

2. *Even If Mr. Casso Recovers from COVID-19, He Will be at Severe Risk of Experiencing More Severe Symptoms from Reinfection Caused by of the Worsening Conditions at USP Tucson*

---

[20] *See COVID-19's Health Effects Can Last Long After Virus is Gone*, Bloomberg News (May 12, 2020), https://rb.gy/igmyr5.

[21] *Id.*

[22] George Citroner, *What We Know About the Long-Term Effects of COVID-19*, Healthline (Apr. 21, 2020), https://rb.gy/0bjnwp.

[23] *See supra* National Kidney Foundation at n. 15.

As shown above, Mr. Casso is at serious risk of experiencing severe and lasting complications, and death, from his current infection with COVID-19. Although that alone constitutes extraordinary and compelling circumstances warranting a reduction of his sentence, Mr. Casso's heightened risk of reinfection if he recovers and is returned full-time to USP Tucson independently presents extraordinary and compelling reasons for a reduction of his sentence. Studies have shown that individuals with serious medical conditions are likely to be reinfected with COVID-19, which in Mr. Casso' case is especially likely given that USP Tucson is currently facing one of the nation's worst outbreaks of COVID-19, with no indication that the outbreak will be contained anytime soon.

As explained in detail in the previous section, Mr. Casso has numerous serious medical conditions that drastically increase his risk of suffering severe complications or death due to COVID-19. But even without a positive diagnosis of COVID-19, courts nationwide have recognized that each of Mr. Casso's serious medical conditions *independently* serve as a basis for granting compassionate release during the COVID-19 pandemic. *See Mongelli*, 2020 WL 6449237 at *1–3 (granting compassionate release of an inmate with prostate cancer); *United States v. Heitman*, No. 3:95-CR-0160(4)-G, 2020 WL 3163188, at *1 (N.D. Tex. June 12, 2020) (granting compassionate release to a 70-year-old with prostate cancer); *United States v. Smith*, No. CR07-3038-LTS, 2020 WL 2844222, at *1, 8 (N.D. Iowa June 1, 2020) (granting compassionate release of an inmate with cancer); *United States v. Salvagno*, 456 F. Supp. 3d 420, 422 (N.D.N.Y. 2020) (granting compassionate release of an inmate with hypertension); *United States v. Zukerman*, 451 F. Supp. 3d 329, 330 (S.D.N.Y. 2020) (granting compassionate release of a 75-year-old inmate with hypertension); *United States v. Conner*, No. CR07-4095-LTS, 2020 WL 3053368, at *1 (N.D. Iowa June 8, 2020) (granting compassionate release of an inmate with hypertension and spinal

stenosis); *United States v. Davidson*, No. 2:16-CR-00139-2, 2020 WL 4877255, at *1 (W.D. Pa. Aug. 20, 2020) (granting compassionate release of an inmate with kidney disease and hypertension); *United States v. Ginsberg*, Case No. 14 CR 462, 2020 WL 2494643, at *2 (N.D. Ill. May 14, 2020) (granting compassionate release of an inmate with respiratory disease). Because Mr. Casso suffers from not one, but many, chronic medical conditions, all of which independently place him at a heightened risk of suffering severe symptoms from infection with COVID-19 and in combination place him at an extremely heightened risk, Mr. Casso's health conditions present extraordinary and compelling reasons justifying his immediate release into home confinement.

Even assuming Mr. Casso recovers from the virus, his situation still demonstrates extraordinary and compelling reasons for reduction of his sentence. As stated previously, Mr. Casso may suffer from heart, lung, and kidney damage as a result of his current battle with COVID-19. This reality, coupled with the fact that Mr. Casso still faces a real risk of reinfection if he recovers from the virus, constitute extraordinary and compelling reasons for a reduction of his sentence. Early studies indicate that a person who has already contracted and recovered from COVID-19 may get reinfected because the antibodies created by the body to combat the virus may only last two to three months.[24] More recent studies continue to indicate that reinfection is possible due to the decrease in immunity over time.[25] In addition, studies show that individuals over the

---

[24] See Apoorva Mandavilli, *You May Have Antibodies After Coronavirus Infection. But Not for Long*, NY Times (Jun. 20, 2020), https://nyti.ms/3doZZiV; Elissa Nunez, *COVID-19 antibodies may fade in as little as 2 months, study says*, ABC News (Jun. 24, 2020), https://abcn.ws/3dxC40A ("[T]he study's authors said their results caution against 'immunity passports,' or the idea that people who have recovered from infection should be granted some sort of special status to allow them to travel or return to work because they are theoretically totally immune from reinfection.").

[25] Jen Christensen, *British study shows evidence of waning immunity to Covid-19*, CNN (Oct. 26, 2020),https://cnn.it/32sOYdU; *Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)*, CDC, https://bit.ly/3nbvWk7 , (last updated Nov. 3, 2020) ("Published case reports have shown that reinfection is possible, but it is still unclear how long people who have recovered from COVID-19 are protected against reinfection with SARS-CoV-2, what concentration of antibodies is needed to confer protection, and how often reinfection may occur.").

age of 75 lose their antibodies more rapidly than younger people.[26]  At least one court has found that the risk of reinfection combined with serious medical conditions constitute extraordinary and compelling circumstances warranting a reduced sentence.  *See Malufau*, 2020 WL 4218038, at *4 (granting compassionate release to an inmate who had already tested positive for COVID-19 because he had serious medical conditions which would "substantially increase risk of intensive care unit admission and death if he should contract COVID-19 again.").  Like the individual in that case, if Mr. Casso recovers from COVID-19—which will already be extremely difficult given his numerous comorbidities with the virus—he will still be at risk of reinfection in the future.

This is especially true given that prisons are ill equipped to slow the spread of COVID-19 once introduced into a facility.  Studies show that inmates in prison are infected by COVID-19 at a rate over five times greater than the nation's overall rate, and the death rate of inmates is higher than the corresponding national rate.[27]  Thousands of federal inmates and hundreds of staff have confirmed positive test results for COVID-19, and 134 inmates have died as of November 6, 2020.[28]  Yet, these statistics do not present an accurate picture of the spread of the virus at BOP facilities, because the BOP, by its own admission, has not conducted widespread testing.  As of November 5, 2020, there were a total of 154,488 federal inmates,[29] but the BOP has only conducted

---

[26] Jen Christensen, *British study shows evidence of waning immunity to Covid-19*, CNN (Oct. 26, 2020), https://bit.ly/3nbvWk7 ("Younger people who had recovered from Covid-19 had a slower loss of antibodies, compared to people older than 75 who had survived an infection, the researchers found.")

[27] *Covid-19's Impact on People in Prison*, Equal Justice Initiative, https://bit.ly/3kdJN7E, (last updated Aug. 21, 2020).

[28] *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/, (last updated Nov. 6, 2020).

[29] *Population Statistics*, Federal Bureau of Prisons, https://bit.ly/3k9YWqh, (last updated Nov. 5, 2020).

a total of 72,547 tests as of November 6, 2020—less than half of the prison population.[30]  By comparison, state facilities that sought to aggressively test inmates and staff, regardless of symptoms, found widespread infection, which may indicate overwhelming numbers of unreported cases in BOP facilities.[31]  This is particularly true at Mr. Casso's facility.  USP Tucson currently has one of the highest rates of COVID-19 cases in the federal prison system, with 153 inmates and 27 staff members currently testing positive.  A court in this District recently granted compassionate release to a COVID-19-positive inmate with prostate cancer at a facility with even fewer COVID-19 cases.  *Mongelli*, 2020 WL 6449237, at *2 (noting that FCI Fort Dix had 166 inmates and 10 staff members with positive tests).  Even if the Government argues that it has the virus under control at USP Tucson, this argument is not convincing given that "they did not protect [Mr. Casso] from exposure to the disease in the first instance, despite his vulnerable status." *Razzouk*, 2020 U.S. Dist. LEXIS 120086, at *11.

Mr. Casso also will receive better treatment for both COVID-19 and his underlying medical conditions outside of prison, as USP Tucson is likely to see a significant rise in rates of hospitalization based on its increasing number of COVID-19 positive tests among inmates.[32] █

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[30] *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/, (last updated Nov. 6, 2020).

[31] *See, e.g.*, Josiah Bates, *Ohio Began Mass Testing Incarcerated People for COVID-19. The Results Paint a Bleak Picture for the U.S. Prison System*, Time Magazine (Apr. 22, 2020), https://bit.ly/2WssXZU (reporting that 78% of prisoners at Marion Correctional Institute in Ohio tested positive for COVID-19).

[32] *See, e.g.*, *Covid-19's Impact on People in Prison*, Equal Justice Initiative, https://bit.ly/38vjIhZ, (last updated Aug. 21, 2020) (reporting that COVID-19 "is spreading rapidly in prisons and jails across the country").

████████████████████████████████████████

██████████████.

### III. The § 3553(a) Factors and, to the Extent Applicable, the §3142(g) Factors Warrant a Reduction of Mr. Casso's Sentence

Under the First Step Act, "[a]fter finding 'extraordinary and compelling reasons,' a court must then 'consider[] the factors set forth in section 3553(a).'" *Ebbers*, 432 F. Supp. 3d at 429 (quoting 18 U.S.C. § 3582(c)(1)(A)). These factors include the defendant's "history and characteristics," "the nature and circumstances of the offense," "the seriousness of the offense," the need for the sentence to "promote respect for the law" and "to provide just punishment for the offense," to "afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and to "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a). Courts also consider the factors in 18 U.S.C. § 3142(g), which concern whether a defendant is a danger to the community, when analyzing a defendant's case under the Policy. U.S.S.G. § 1B1.13(2). Under either § 3553(a) or, to the extent applicable § 3142(g), the factors enumerated in these sections weigh in favor of reducing Mr. Casso's prison sentence to time served and imposing a period of supervised release to be served in home confinement.

Mr. Casso was convicted of numerous charges of federal racketeering, and this Court sentenced him to life imprisonment. *See* Judgment, Dkt. No. 1141. Mr. Casso had a lengthy criminal history at the time of his sentence, and his convictions involved several violent felonies. Although Mr. Casso was convicted of serious offenses, his life sentence, in his current condition, no longer provides deterrence to criminal conduct committed by Mr. Casso, nor does his sentence "protect the public from further crimes of [Mr. Casso]." 18 U.S.C. § 3553(a)(2)(B), (C). Mr. Casso has spent over two decades of his adult life in prison, and he has served most of his sentence

with deteriorating health. *See United States v. Bellamy*, No. 15-165(8) (JRT/LIB), 2019 WL 3340699, at *7 (D. Minn. July 25, 2019) (granting compassionate release for a defendant that "served a significant portion of his sentence and [who] has done so in extraordinary and compelling circumstances given his health"). Keeping Mr. Casso in prison would not serve these objectives; he no longer has ties to his former life of crime, and his advanced age and lack of mobility make it unlikely that he will be involved in any future criminal conduct. While not downplaying the seriousness of his offenses, Mr. Casso has learned from his nearly quarter century in prison, which has given him time to reflect on the seriousness of his conduct. *See United States v. Duncan*, No. 3:11-cr-00012, 2020 WL 4669944, at*12 (M.D. Tenn. Aug. 12, 2020) (noting that the defendant "had almost a decade in prison to reflect on his conduct"). █████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████. *See* 18 U.S.C. § 3553(a)(1)(D) ("to provide the defendant with needed . . . medical care . . ."). Finally, Mr. Casso's characteristics counsel in favor of release. 18 U.S.C. § 3553(a)(1). He is currently seventy-eight years old, and, as has been stated throughout, is in a fragile medical state due to his numerous serious conditions, including prostate cancer, heart disease in connection with which he had been awaiting a heart operation prior to the pandemic, and kidney disease. Moreover, the fact that he has been diagnosed with COVID-19 and is currently experiencing significant symptoms, in conjunction with his medical ailments, counsel in favor of his early release. *See United States v. Medlin*, No. 3:09-cr-00204, 2020 WL 4274199, at *6 (M.D. Tenn. July 24, 2020) (finding the defendant's "ageing [sic], recent COVID-19 infection, and current medical condition cuts substantially in favor of release").

This Court recently released a defendant in a very similar position (and with a very similar criminal history) to Mr. Casso. *See Mongelli*, 2020 WL 6449237, at *1–2. The Court's reasoning with respect to the defendant in that case readily summarizes the application of the section 3553(a) factors to Mr. Casso:

> The court also finds that the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of Mr. Mongelli's release. The crimes to which Mr. Mongelli pleaded guilty are very serious, and Mr. Mongelli has served nearly 18 years in prison for those crimes, with approximately three years remaining on his sentence. The time that Mr. Mongelli has already served is substantial, as befits the nature and circumstances of the offense. The extraordinary and compelling reasons for Mr. Mongelli's release undercut the possibility that a longer sentence would be necessary to reinforce principles of deterrence: the position in which Mr. Mongelli finds himself is both unique and unfortunate, and no right-minded observer would regard his release, at this juncture and under these circumstances, as a windfall. Finally, the court is satisfied that Mr. Mongelli, after nearly 18 years of imprisonment and facing an extended term of supervised release, does not pose a danger to the public.

*Id.* at *3. So too do the § 3553(a) factors favor Mr. Casso's release.

Mr. Casso's continued incarceration is not necessary to protect the public. *See* 18 U.S.C. § 3142(g). Mr. Casso is now seventy-eight years old, is wheelchair-bound, and suffers from debilitating medical conditions. For similar reasons stated above, Mr. Casso has spent a significant portion of his life in prison and, in conjunction with his health conditions, poses no threat to the public. *See Mongelli*, 2020 WL 6449237, at *3 ("[T]he Court is satisfied that Mr. Mongelli, after nearly 18 years of imprisonment and facing an extended term of supervised release, does not pose a danger to the public."). Moreover, it is likely that Mr. Casso will require significant rehabilitation after recovering from his fight with the COVID-19 virus. As one district court recently described, a defendant's recent COVID-19 infection "would tend to cool [his] enthusiasm for being out and about committing crimes—especially since . . . it is widely understood at present that a person who recovers from COVID-19 could have sustained long-term health damage and could be infected a

second[]time . . . ." *Medlin*, 2020 WL 4274199, at *5; *see also Duncan*, 2020 WL 466994, at *12 (noting that the "high risk of debilitating illness or death in the COVID-19 environment" should reduce the defendant's likelihood of being a danger to the community).

Mr. Casso's continued incarceration puts him at grave risk of not surviving his current fight with COVID-19. The extraordinary and compelling circumstances of Mr. Casso's situation, coupled with the totality of the 3553(a) factors outweigh the factors related to his past criminal history and conduct.

Mr. Casso therefore requests that the Court grant his Motion for compassionate release, reduce his prison sentence to time served, and convert his remaining term of imprisonment to a term of supervised release, conditioned on his home confinement.

## **CONCLUSION**

For the foregoing reasons, Anthony Casso respectfully requests that the Court grant his motion for compassionate release.

Dated: November 10, 2020

Respectfully submitted,

*/s/ James D. Arden*

James D. Arden
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5889
Fax: (212) 839-5539
jarden@sidley.com

*Counsel for Defendant Anthony Casso*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2020, I caused the foregoing document to be electronically served upon the Government via e-mail and, consistent with Your Honor's Individual Rules, will file this document via the Court's CM/ECF system upon the completion of briefing.

/s/ *James D. Arden*

James D. Arden
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5889
Fax: (212) 839-5539
jarden@sidley.com

*Counsel for Defendant Anthony Casso*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

ANTHONY CASSO,

Defendant.

No. 1:90-cr-00446-FB-3

**DECLARATION OF QAIS GHAFARY**

Pursuant to 28 U.S.C. § 1746, QAIS GHAFARY declares:

1.  I am an attorney duly admitted to practice law in the State of New York and in this Court, and I am an associate at Sidley Austin LLP.  I submit this declaration on behalf of ANTHONY CASSO in support of his Emergency Motion for Compassionate Release.  I have personal knowledge of the information contained herein.

2.  On November 9, 2020, Mr. Casso's ███████████, emailed Sidley Austin associate Melissa Verne stating that Mr. Casso's case manager at USP Tucson notified her that Mr. Casso had tested positive for COVID-19 and was in and out of the hospital over the last several days.  ██████ indicated that Mr. Casso first tested positive for COVID-19 late last week and was hospitalized because he had severe difficulty breathing; a second test at the hospital confirmed that he was COVID-19 positive.  After he was thought to have stabilized, USP Tucson personnel returned him to the prison facility but, over the weekend (November 7-8) his circumstances deteriorated again and he was rushed back to the hospital.  He was eventually returned to the prison facility.  For a third time, on the morning of November 9, Mr. Casso was in respiratory distress and he was once again rushed back to the emergency room.  ██████ stated that as of the afternoon of November 9, Mr. Casso remained in the hospital.  A true and

correct copy of the email from ██████, dated November 9, 2020, is attached hereto as **Exhibit A.**

3.      On August 10, 2020, counsel for Mr. Casso received documents from him that included his medical records.  A true and correct copy of the records received are attached hereto as **Exhibit B.**

4.      A true and correct copy of the warden of USP Tucson's denial of Mr. Casso's request for compassionate release is attached hereto as **Exhibit C.**

Dated:       November 10, 2020
             New York, New York

                                    __/s/ Qais Ghafary_____
                                    Qais Ghafary
                                    SIDLEY AUSTIN LLP
                                    787 Seventh Avenue
                                    New York, NY 10019
                                    Tel: (212) 839-8430
                                    Fax: (212) 839-5599
                                    qghafary@sidley.com

                                    *Counsel for Defendant*
                                    *Anthony Casso*

# Exhibit A

**From:**
**To:**    Verne, Melissa
**Subject:**
**Date:**    Monday, November 9, 2020 12:40:22 PM



Hi Melissa, I'm emailing you to let you know that I had 5 calls from Case manager Mr. Palmer from usp Tucson . I did not speak to him until the following morning. He was letting me know that ████, Anthony Casso has tested Positive for Covid 19 and was having trouble breathing . He does have respitory disease. They took him to a outside hospital where he was given a second covid test. It came back positive. They were trying to stabilize his breathing so they could bring him back to the prison and, put him into quarantine. They brought him back and, over this past weekend had to rush him back to the hospital and brought him back to the prison again. I received a phone call this morning at 11:49 am from Mr. Palmer telling me that he is in respitory distress and he had to be rushed back to the ER this morning. This is where he is now. I will keep you updated as soon as I hear anything else. Than you, ████████
Sent from my iPhone

# Exhibit C

CASSO, Anthony
Register Number: 16802-050

This is in response to your Request to Staff wherein you request
consideration for a Compassionate Release/Reduction in Sentence,
based on Elderly Inmate with Medical Conditions criteria,
specifically; spine damage which causes chronic pain and requires
use of a wheelchair, waiting on a heart operations for blockages
which cause shortness of breath, injections due to the remission
of prostate cancer, catheter use due to a bladder defect, infection
affecting your kidneys which are functioning at one-third capacity,
and the use of hearing aids, as well as risks associated with the
current COVID-19 pandemic.

A review of your circumstance indicates you were sentenced to a Life
sentence for multiple counts of Racketeering, multiple counts of
Conspiracy to Commit Murder, multiple counts of Murder, multiple
counts of Conspiracy to Bribe Labor Unions, multiple counts of
Conspiracy to Commit Extortion, and Conspiracy to Commit Income Tax
Evasion.

Although you identify health conditions as your justification for
a compassionate release, consultation with USP Tucson's medical
department, confirms your medical conditions are being appropriately
managed and treated.

To be considered for a compassionate release under the criteria you
have identified, it is necessary to have served at least 50% of your
sentence in order to receive early release consideration. Due to
the fact you are serving a LIFE sentence it is not possible to
determine the 50% threshold.

Title 18 of the United States Code, section 3582(c)(1)(A), allows
a sentencing court, on motion of the Director of the BOP, to reduce
a term of imprisonment for extraordinary or compelling reasons.
Program Statement 5050.50, Compassionate Release/Reduction in
Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A)
and 4205(g), provides guidance on the types of circumstances that
present extraordinary or compelling reasons, such as the inmate's
terminal medical condition; debilitated medical condition; status
as a "new law" elderly inmate, an elderly inmate with medical
conditions, or an "other elderly inmate"; the death or incapacitation
of the family member caregiver of the inmate's child; or the
incapacitation of the inmate's spouse or registered partner. Your
request has been evaluated consistent with this general guidance.

The BOP is taking extraordinary measures to contain the spread of
COVID-19 and treat any affected inmates. We recognize that you,
like all of us, have legitimate concerns and fears about the spread
and effects of the virus. However, your concern about being

potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence.

Lastly, considering the nature and circumstance of your offense and your criminal history, as well as the fact you are serving a LIFE sentence, an early release at this time would minimize the severity of your offense.

Based on the above, your request for Compassionate Release is denied. If you are dissatisfied with this response you may utilize the administrative remedy process.


_____                    __9/17/20__
Jared Rardin                                      Date
Warden

 **SIDLEY**

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 212 839 5889
JARDEN@SIDLEY.COM

November 18, 2020

**Via ECF**

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> **Re:** **_United States v. Casso_, No. 1:90-cr-00446-FB-3; Update on the Status of Anthony Casso and USP Tucson**

Dear Judge Block:

We write to provide the Court with an update on Mr. Casso's current physical condition, as well as the conditions at USP Tucson.[1]  Since Mr. Casso submitted his Emergency Motion for Compassionate Release on November 10, 2020, the situation has become much worse.

On November 17, 2020, Mr. Casso's ▮▮▮▮▮▮▮▮▮▮▮ – who has been in regular contact with personnel at USP Tucson – emailed Sidley associate Melissa Verne.  In the email, ▮▮ provided an update that Mr. Casso is currently on a ventilator.  In addition, ▮▮ stated that the doctor providing care to Mr. Casso at the hospital near USP Tucson ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, because Mr. Casso could potentially die in the coming hours or days.  A true and correct copy of this email is attached to this letter as **Attachment A**.

In addition, the situation at USP Tucson with regards to COVID-19 has drastically worsened in the past week.  As of November 18, 2020, USP has the worst outbreak in the federal prison system, with nearly 400 current cases between inmates and staff.[2]  The prison also suffered its first fatality due to COVID-19 on November 10, 2020, when an inmate was found

---

[1] Your Honor previously granted Defendant's letter motion to file under seal his motion for compassionate release and supporting materials.  Defendant recognizes that subsequently a third party motion to unseal those materials has been made, the Court ordered a response, and Defendant filed his response moments ago.  Dkt. Nos. 1210-1211.  Accordingly, Defendant is filing this update letter under seal for the same reasons provided and accepted for the compassionate release motion itself, but will subsequently re-file this letter to reflect the Court's resolution of the unsealing motion currently pending.

[2] _COVID-19 Coronavirus_, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Nov. 18, 2020).

# SIDLEY

unresponsive in his cell.[3]  If Mr. Casso manages to recover from COVID-19 enough to leave the hospital, which is becoming increasingly less likely, he will be returned to a prison which is in the midst of an uncontrollable COVID-19 outbreak.

       Mr. Casso faces an enormous uphill battle of recovering from COVID-19 due to the serious medical conditions that he suffers from, as detailed in his Emergency Motion for Compassionate Release.  Now that he is on a ventilator, his chances of survival have dropped.[4]  Mr. Casso requests that the Court take all of the above information into account when making a decision on his motion.

Respectfully submitted,

*/s/ James D. Arden*

James D. Arden

cc:     Government counsel (via ECF)

---

[3] *Inmate with COVID-19 dies at Tucson penitentiary*, KOLD (Nov. 10, 2020), https://www.kold.com/2020/11/10/inmate-with-covid-dies-tucson-penitentiary/.
[4] While the survival rate has improved from the earliest days of the pandemic, COVID-19 patients who are put on a ventilator still have a 35.7% chance of dying.  Lenny Bernstein, *More covid-19 patients are surviving ventilators in the ICU*, The Washington Post (July 3, 2020), https://www.washingtonpost.com/health/more-covid-19-patients-are-surviving-ventilators-in-the-icu/2020/07/03/2e3c3534-bbca-11ea-8cf5-9c1b8d7f84c6_story html.

# Attachment A

Hi, I'm updating you on ████████ health. Dr. Benjamin Jarrett a pheumenologist from Banner university hospital in Tucson Arizona called me ████████████████████████████ . █████ ███ is currently on a ventilator at the moment. I have further updates at this time hopefully I will hear something soon. I will keep in touch. Thank you, ██████

Sent from my iPhone